**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**NATALIE STURICK,**

               **Plaintiff,**             **5:11-cv-662
                                                         (GLS)**

               v.

**MICHAEL J. ASTRUE,**
Commissioner of the Social
Security Administration,

               **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                   KAREN S. SOUTHWICK, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

Iaconis Law Firm                      CHRISTOPHER D. THORPE,
501 Genesee Street                  ESQ.
Chittenango, NY 13037

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN      MARIA P. FRAGASSI
United States Attorney                SANTANGELO
100 South Clinton Street            NOAH M. SCHABACKER
Syracuse, NY 13261                 Special Assistant U.S. Attorneys

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Natalie Sturick challenges the Commissioner of Social Security's denial of her claim for a period of disability and Disability Insurance Benefits (DIB),[1] seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Sturick's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On November 29, 2007, Sturick, who suffers from, among other things, a severe impairment of her left knee, filed an application for DIB under the Social Security Act ("the Act"), alleging disability since October 27, 2005. (*See* Tr.[2] at 8, 72, 150-59.) After her application was denied,

---

[1] The Complaint also alleges that Sturick made a claim for Supplemental Security Income (SSI) benefits. (*See* Compl.) Inasmuch as no application for SSI was apparently filed by Sturick, the court disregards that reference.

[2] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 16.)

2

(*see id.* at 75-78), Sturick requested a hearing before an Administrative Law Judge (ALJ), which was held on October 8, 2009, (*see id.* at 24-71). On January 20, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-4, 5-23.)

Sturick commenced the present action by filing her Complaint on June 13, 2011 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 14, 16.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 18, 20.)

### III. **Contentions**

Sturick contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 18 at 8-25.) Specifically, Sturick claims that the: (1) ALJ erred by failing to find that listings 1.02(A) and 1.03 were met; (2) residual functional capacity (RFC) determination is the product of legal error; (3) ALJ improperly evaluated her credibility; and (4) step five determination is infirm because the hypothetical

3

posed to the vocational expert (VE) was incomplete and based upon the flawed RFC analysis. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is supported by substantial evidence. (*See* Dkt. No. 20 at 16-25.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 18 at 1-6; Dkt. No. 20 at 1-14.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

### VI. Discussion

**A. Listings 1.02(A) and 1.03**

Sturick first argues that the ALJ committed error by failing to find that her knee impairments met listings 1.02(A) and 1.03. (*See* Dkt. No. 18 at 8-

12.) The Commissioner counters that the evidence of record does not demonstrate the requisite joint space narrowing, bony destruction, or ankylosis, or inability to ambulate effectively. (*See* Dkt. No. 20 at 16-18.) The court agrees with the Commissioner.

If a claimant's "impairment(s) meet[] or equal[] a listed impairment" and "meets the durational requirement," she will be found disabled. 20 C.F.R. § 404.1520(d). Listings 1.02(A) and 1.03 deal with musculoskeletal impairments related to major weight-bearing joints, like the knee. *See* 20. C.F.R. pt. 404, subpt. P, app. 1, §§ 1.02(A), 1.03. To meet listing 1.02(A), a claimant must have "[m]ajor dysfunction of a joint," which is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>     A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

*Id.* § 1.02(A). Listing 1.03 concerns reconstructive surgery of a major weight-bearing joint and requires: "inability to ambulate effectively, as

5

defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id.* § 1.03. "Inability to ambulate effectively" is defined in simple terms as "extreme limitation of the ability to walk." *Id.* § 1.00(B)(2)(b)(1). An individual who cannot walk without a walker, two crutches or two canes, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, carry out routine ambulatory activities, and climb a few steps at a reasonable pace with the use of a single hand rail does not ambulate effectively. *See id.* § 1.00(B)(2)(b)(2).

The ALJ's finding that Sturick's impairments do not meet or medically equal listing 1.02(A) is supported by substantial evidence.[3] Notably absent as to that listing is a finding on medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of Sturick's knee. In support of this criterion, Sturick merely cites to evidence that generally documents tearing in her posterior cruciate ligament, meniscus, and anterior cruciate ligament, and mild tricompartmental osteoarthritis, chronic ischemis

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citations omitted).

necrosis and small joint effusion. (*See* Tr. at 233, 258-59, 277-78, 313-14.) While osteoarthritis "is accompanied by pain . . . and stiffness," it falls short of ankylosis, which connotes "immobility and consolidation of a joint due to disease, injury, or surgical procedure." Dorland's Illustrated Medical Dictionary 86, 1199 (28th ed. 1994). Moreover, evidence of tearing, swelling, or poor blood supply does not evince the requisite showings. *See generally* 20. C.F.R. pt. 404, subpt. P, app. 1, § 1.02(A). Because one of the required findings is not present, Sturick does not meet listing 1.02(A), and the ALJ's determination to that effect is supported by substantial evidence. *See Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, at *7 (N.D.N.Y. Jan. 21, 2008).

Turning to listing 1.03, the evidence does not indicate that Sturick is unable to ambulate effectively, which precludes a finding that the listing is met.[4] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03. On this point, Sturick argues that physicians described her gait as antalgic and opined that running, jumping, bending, etc. would aggravate her condition, and her physical therapist discontinued a "gait test" because her knee was

---

[4] Notably, this deficiency also precludes a finding that listing 1.02(A) is met.

unstable. (Dkt. No. 18 at 11-12.) What Sturick overlooks is that substantial evidence demonstrates that she can ambulate effectively as that term is defined in the regulations. In particular, Sturick testified during the hearing that, although she prefers to use a "scooter," she can walk "short distances" to, for example, "go in[to the store] and get something quickly, bread or milk or something, and then [she has] to leave." (Tr. at 43.) She also explained that she lives alone in a two-story apartment, and walks on a treadmill and bikes for fifteen minutes at a time on alternating days. (*See id.* at 30, 42, 45-46.) A state agency nonexamining source specifically found that Sturick could walk "at least [two] hours in an [eight] hour work day" with normal breaks, and referenced Dr. Cannizzaro's records that Sturick managed to walk a block, but could not do more because of pain. (*Id.* at 480.) Physical therapist John Jablonka also conducted a functional capacity assessment and noted that Sturick was able to complete seven repetitions of ascending and descending stairs without issue, and could tolerate walking for one hour in an eight hour work day occasionally and over short distances. (*See id.* at 424, 432.)

In fairness to Sturick, there is no doubt that she exhibited an antalgic gait and cannot walk prolonged distances, (*see, e.g.*, *id.* at 432, 451, 478,

8

500, 576), but those conditions do not amount to the requisite extreme limitation of her ability to walk. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(1); *see also Osorio v. Barnhart*, No. 05-CV-1188, 2007 WL 1519531, at *4 (E.D.N.Y. May 25, 2007). Accordingly, the ALJ's determination that Sturick does not have an impairment that meets a listing will not be disturbed.

## B. Weighing Medical Opinions

Next, Sturick attacks the ALJ's RFC determination that she is able to perform sedentary work with certain restrictions to account for her specific limitations. (*See* Dkt. No. 18 at 12-22.) In particular, Sturick claims that the opinions of treating physicians John Cannizzaro, Joseph Catania and Robert Tiso, all of whom concluded that she is disabled, were improperly weighed by the ALJ.[5] (*See* Dkt. No. 18 at 12-20.) She also asserts that the ALJ should have given some deference to the opinions of examining physicians Richard Zogby and C. Perry Cooke. (*See id.* 20-22.) The

---

[5] Sturick also suggests that the ALJ had a duty to contact Dr. Cannizzaro for clarification if his opinion was unclear. (*See* Dkt. No. 18 at 19.) While true that an ALJ must develop the record if it is inadequate to determine whether the claimant is disabled, *see Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1999), the record here contains sufficient evidence and the ALJ had no obligation to seek clarification from Dr. Cannizzaro.

9

Commissioner argues that opinions regarding the ultimate question of disability invade an area reserved to him, and that, notwithstanding that issue, the ALJ's determination regarding the weight afforded to the various opinions is supported by substantial evidence. (*See* Dkt. No. 20 at 18-22.) The court again agrees with the Commissioner.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). However, opinions from treating sources on issues reserved to the Commissioner, i.e., dispositive issues, are not given "any special significance." 20 C.F.R. § 404.1527(d)(3). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and

specialization of the examiner. *See id.* § 404.1527(c).

Here, the court first notes that Dr. Cannizzaro's opinions—which have been highlighted by Sturick—that she is or will remain "totally disabled" are not determinative. (Dkt. No. 18 at 14-18); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). In any event, the opinions of Sturick's treating physicians are inconsistent with other substantial evidence in the record, and, thus, were properly not given controlling weight by the ALJ. *See Halloran*, 362 F.3d at 32. The opinions of Drs. Zogby and Cooke were properly discounted for the same reason. In particular, the opinions of physicians Jalal Sadrieh, Louis Benton, and Daniel Carr—all of whom examined Sturick and offered good medical support for their impressions—demonstrates that she could perform sedentary work given the mild to moderate limitations emanating from her knee injury. (*See* Tr. at 447-51, 452-57, 466-71, 485-88.) Dr. Cannizzaro's own findings were also somewhat inconsistent with his ultimate opinion that Sturick was totally disabled. For instance, he found, on several occasions, that her knee was stable and had a fair or better range of motion. (*See, e.g., id.* at 439, 441, 446.) Thus, the weight afforded to the various opinions by the ALJ is supported by substantial evidence for these reasons and more, which are

11

fully articulated in her written decision. (*See id.* at 19-21.)

## C. <u>Credibility Determination</u>

Sturick next alleges that the ALJ applied the wrong legal standard in determining that her "statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible." (Dkt. No. 18 at 22-24.) This argument is two-fold: first, Sturick contends that the ALJ erred by comparing her statements to the RFC determination; and second, the ALJ failed to consider the factors set forth in 20 C.F.R. § 404.1529(c) and SSR 96-7p, 61 Fed. Reg. 34483, 34485 (July 2, 1996). (*See id.*) In opposition, the Commissioner claims that the ALJ thoroughly evaluated Sturick's subjective complaints of pain in light of the entire record, and considered the appropriate factors in finding her allegations of disability not fully credible. (*See* Dkt. No. 20 at 22-24.) The court agrees with the Commissioner in this regard as well.

An ALJ must consider a claimant's subjective complaints of limitations resulting from his impairments, including those from pain, in gauging his RFC. *See* 20 C.F.R. § 404.1545(a)(3). However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). The

12

Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 61 Fed. Reg. at 34485-86. Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as she sets forth her "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Only a limited discussion is necessary here. Despite Sturick's claims to the contrary, it is readily apparent that the ALJ considered all of the record evidence and the appropriate factors in finding Sturick's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not credible to the extent they are inconsistent with" the RFC determination. (Tr. at 13.) The RFC determination is a model of plenitude

which spans nine pages; therein, the ALJ specifically considered Sturick's daily activities, her pain and the medications she used to treat it, precipitating and aggravating factors, other treatment for pain, and measures taken to relieve pain other than treatment. (*See id.* at 12-18.) The ALJ's credibility finding, which considered the record evidence and appropriate factors, is amply supported.

### D. **Vocational Expert**

Lastly, Sturick takes issue with the ALJ's finding at step five. (See Dkt. No. 18 at 24-25.) In particular, she claims that the hypothetical question posed to the VE was incomplete "as it was the product of an inaccurate RFC and flawed credibility determination." (*Id.* at 24.) The court finds no merit in this argument, largely for reasons already articulated.

A hypothetical question posed by the ALJ must be based on substantial evidence; if it is, the ALJ may rely on a VE's responsive testimony in rendering a determination about the claimant's ability to do other work. *See* 20 C.F.R. §§ 404.1566(e); *Wavercak v. Comm'r of Soc. Sec.*, No. 5:07-cv-482, 2010 WL 2652201, at *5 (N.D.N.Y. June 25, 2010). Here, as explained above, the RFC and credibility determinations are supported by substantial evidence. *See supra* Part VI.B-C. The response

14

to the hypothetical question asked of the VE, which accounted for, among other things, "an individual who performs sedentary work . . . [with] no prolonged standing or waking, no repetitive squatting or kneeling, no work around heights, and occasional postural . . . activities . . . except for no climbing of ladders, ropes and scaffolds, and no kneeling," provided the ALJ with substantial evidence regarding the availability of other work in the national economy. (Tr. at 59-63.)

### VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Sturick's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 12, 2012
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court